

**Monica Goracke**
OSB #06065
mgoracke@oregonlawcenter.org
**Ed Johnson**
OSB #96573
ejohnson@oregonlawcenter.org
**Spencer M. Neal**
OSB #77286
mneal@oregonlawcenter.org
**OREGON LAW CENTER**
921 SW Washington #516
Portland, OR 97205
Phone (503) 295-2760
Fax (503) 295-0676
Attorneys for Plaintiffs

*filed*
*RECHP 08 DEC 12 1045usdc-orp*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**MARLIN ANDERSON, MARY BAILEY,
MATTHEW CHASE, JACK GOLDEN,**
on behalf of themselves and all others similarly
situated, Plaintiffs,

vs.

**CITY OF PORTLAND**; CITY OF PORTLAND
POLICE CHIEF **ROSANNE SIZER**, in her
individual and official capacity; CITY OF
PORTLAND POLICE OFFICER **J. HURLEY**,
in his individual and official capacity; CITY OF
PORTLAND POLICE OFFICER **J. FULITANO**,
in his individual and official capacity; CITY OF
PORTLAND **POLICE OFFICERS DOES 1
through 50**, Defendants.

Case No.: CV 08 - 1447 AA

CLASS ACTION COMPLAINT
FOR INJUNCTIVE AND
DECLARATORY RELIEF
AND DAMAGES

42 USC § 1983

**JURY TRIAL REQUESTED**

1    COMPLAINT

## INTRODUCTION

Homeless individuals in the City of Portland have been moved arbitrarily from place to place, excluded from parks, and cited for camping and trespassing by police officers, even though they cannot obtain housing or adequate shelter in Portland. The City of Portland's policies and practices, as applied to these individuals, violate their constitutional rights to travel, to freedom of movement, and to equal protection secured by the Fourteenth Amendment and to freedom from cruel and unusual punishment secured by the Eighth Amendment, applicable to Defendants under the Fourteenth Amendment. Plaintiffs seek equitable relief and damages pursuant to 42 USC § 1983 to stop the City from enforcing city ordinances which prohibit homeless persons from sleeping outside in Portland. Plaintiffs seek this relief for themselves and on behalf of all similarly situated persons pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Sleeping has been recognized by multiple courts, including the Ninth Circuit Court of Appeals, as a life-sustaining act that is fundamental to human existence. Punishing homeless people for sleeping outside is placing the burden of the lack of sufficient housing squarely on the shoulders of those who can do the least to remedy this problem. It exacerbates the misery and suffering of homeless people and pointlessly prolongs their homelessness by enmeshing them in the criminal justice system's maze of court dates, fines, community service, and jail time. It also fails to provide alternative options. Many homeless people are shut out of the private housing market because of their eviction history, criminal background, or lack of income. Shelters are difficult if not impossible to access for people who are disabled, mentally ill, seeking drug or alcohol treatment, part of a couple, or who have pets. Rather than address these problems directly, the City of Portland has chosen in effect to criminalize the status of being homeless.

## JURISDICTION

1.      Jurisdiction exists for the claim pursuant to 28 USC §§ 1331 (federal question) and 1343 (civil rights).

## PARTIES

2.      Plaintiffs Marlin Anderson, Mary Bailey, Matthew Chase, and Jack Golden are and were at all relevant times residents of Portland, Oregon.

3.      Defendant City of Portland is a municipality under the laws of the State of Oregon, with the capacity to sue and be sued. The City is the legal and political governmental entity responsible for the actions of the Portland Police Bureau, its officials, agents and employees. The City is sued in its own right and on the basis of the acts of its officials, agents, and employees.

4.      Defendant Rosanne Sizer is the Chief of Police of the Portland Police Bureau (PPB). She is the official within the PPB responsible for the administration and operation of the PPB. The policies complained of herein are enforced pursuant to the direction of Chief Sizer. All these acts were pursuant to the custom and practice of the City of Portland and Police Chief Sizer.

5.      Defendant Officer J. Hurley is a police officer employed by the Portland Police Bureau. He issued a camping citation to Plaintiff Anderson.

6.      Defendant Officer J. Fulitano is a police officer employed by the Portland Police Bureau. He issued unlawful structures citations to Plaintiffs Chase and Golden.

7.      Defendants Officers Does 1-50 are police or park officers employed by the City. At all relevant times they were acting under color of state law.

## FACTUAL ALLEGATIONS

8.      Plaintiff Marlin Anderson is involuntarily homeless. He has physical and mental disabilities that prevent him from obtaining or keeping full-time work. The temporary work he is able to obtain does not pay enough for him to afford rental housing. After his wife died a few years ago, he fell into a deep depression from which he still suffers. He has five dogs, who help alleviate his depression, and he has been unable to find a landlord who will accept his dogs. He has been living in a van with his dogs for the past few years.

9.      On the afternoon of August 30, 2007, Anderson was at Delta Park in north Portland. It was a hot summer day and he was taking a nap. While taking a nap, he was lying on top of a sleeping bag in the grassy area between Union Court and Martin Luther King Jr. Blvd., south of the dog park at Hayden Meadows Drive. He had his five dogs with him.

10.     Portland Police Officer J. Hurley found Anderson while he was sleeping at the park that afternoon. Hurley had had previous contact with Anderson and had warned Anderson not to "camp" in that area.

11.     Officer Hurley cited Anderson for unlawful camping under Portland City Code 14A.50.020.

12.     In court, Anderson pled not guilty and was scheduled for trial on October 15, 2007. Upon being notified on October 11, 2007 that Anderson would be represented by counsel, the District Attorney communicated to counsel that it was dismissing the case against Anderson.

13.     Plaintiff Mary Bailey is involuntarily homeless. She is forced to live outside because she has disabilities and has not been able to work or to get approved for Social Security Disability income. She usually sleeps outside in southeast Portland near the Hawthorne Bridge,

4      COMPLAINT

with her partner Matthew Chase.

14.    While sleeping outside, Plaintiff Bailey has been told to move along by police frequently. Police have told her that she could not lie down to sleep, even though she told them that she has medical problems and needs to rest, and showed them a doctor's note. In June 2008, she slept in the park during the day, because she couldn't sleep anywhere at night, and suffered severe sunburn.

15.    Plaintiff Bailey's medical problems include frequent seizures due to traumatic brain injury caused by domestic violence from her ex-husband. When she has seizures, she loses all of her short-term memory and has to re-learn many basic facts. Staying in close contact with her partner is thus essential. She needs to take a lot of medication because of her disabilities, but she is unable to take it because it makes her fall asleep and she has nowhere safe to sleep. As a result, her medical problems cause her to be taken to the hospital, and she incurs medical bills that she cannot pay.

16.    Shelter beds for women are extremely limited in Portland. Aside from the lack of shelter, Plaintiff Bailey cannot move into women-only shelter for two additional reasons: when she has seizures, staff people call an ambulance and send her to the hospital even when she does not need to go, which causes her to incur unnecessary hospital bills. Also, her partner helps her regain her memory after the seizures. Without this help, she would be disoriented and unable to function.

17.    Plaintiff Matthew Chase is involuntarily homeless. He has lived in Oregon all of his life and Portland for most of his life. He has been homeless off and on for 22 years. He has no income and has been unable to find housing that he can afford, although he would like to

move inside. He usually sleeps outside in southeast Portland near Hawthorne Bridge, with his partner Mary Bailey.

18.    While sleeping outside, Plaintiff Chase has been told to move along by police frequently.

19.    Plaintiff Jack Golden is involuntarily homeless. He has lived in Portland all of his life. He has been homeless off and on for about 30 years. He has Social Security disability income of $637 per month, but has been unable to find housing that he could afford, although he would like to move inside. He usually sleeps outside in southeast Portland near the Hawthorne Bridge.

20.    While sleeping outside, Plaintiff Golden has been told to move along by police frequently.

21.    On May 7, 2008, Plaintiff Matthew Chase and Plaintiff Jack Golden were in a temporary campsite under the Hawthorne Bridge. Portland police officers posted a no-camping notice on each of their tents. The notices both had handwritten notes on them saying "1 p.m., time to be moved or this stuff will be taken away." Chase and Golden understood this to mean that they had 24 hours from 1 p.m. on May 7, 2008 to move their tents and belongings.

22.    About 8 hours later, on the night of May 7, 2008, just before 9 p.m., a different police officer came and told Golden and Chase that they had to pack up their stuff and move it right away. This officer gave both of them citations on the spot for violating Portland City Code 14A.50.050, "erecting a structure on public property," a misdemeanor. The officer who gave them the citations and signed it was Officer J. Fulitano of the Portland Police Bureau.

23.    In September 2008, Plaintiff Mary Bailey and Plaintiff Matthew Chase were

6    COMPLAINT

living outside on the parking lot of a building in southeast Portland. They had the permission of
the manager of that building to be there. They had also stored their belongings in a neat pile on
the parking lot since December 2007. They were told in September by the manager of the
building that police officers had threatened to "shut down" the building if Ms. Bailey and Mr.
Chase did not move their belongings.

24. On or about October 1, 2008, Plaintiffs Bailey and Chase did move their belongings
from the private property onto the nearby street. They took care to keep their property
well-organized and not to obstruct any rights-of-way. However, the next day, October 3, they
returned to this location to find most of their belongings gone and the rest scattered about and
ransacked. There was a "notice of illegal camping" on top of their remaining belongings, with no
date or time indicated as to when the camp would be "swept."

25. Plaintiffs Bailey and Chase went to the location indicated on the notice, 929 N.
Kerby Ave., to recover their property. The only items recovered were some clothing. The
clothing had been put outside and was wet and moldy. (Plaintiffs Bailey and Chase had kept
everything at their campsite under a tarp.) Plaintiffs Bailey and Chase lost two bicycles, two
bicycle trailers, clothing, boots, tools, other personal items, and irreplaceable family photographs
and mementos (including the ashes of Ms. Bailey's deceased father). They have been working
with JOIN, a local social service agency, to find housing, and if they had been given warning of
the sweep, they could have requested help from their JOIN case manager to move their
belongings.

26.     Under section 14A.50.020 of the Portland City Code (PCC), it is unlawful to
"camp" on any public property or public right of way. As defined in PCC 14A.50.020, "to

7      COMPLAINT

camp" means to set up or to remain in or at a campsite for the purpose of establishing or

maintaining a temporary place to live. Also under this section, the term "campsite" means any

place where any bedding, sleeping bag, or other sleeping matter, or any stove or fire is placed,

established, or maintained, whether or not such place incorporates the use of any tent, lean-to,

shack, or any other structure, or any vehicle or part thereof.

27.    The Portland Police Bureau's Directive, which is the document that guides

officers enforcing PCC 14A.50.020, states that 24 hours' notice will be posted before officers

may conduct sweeps of "established campsites." However, the Directive defines "established

campsites" as places where a "camp structure" exists on public property. The Directive therefore

does not apply to places where persons are sleeping without benefit of a "hut, lean-to, or tent."

No notice must be given in these situations, contrary to the requirements of state law. Moreover,

the Directive does not require officers to store personal property or notify local social service

agencies unless they are sweeping an "established campsite."

28.    On October 1, 2008, the Portland Police Bureau published a revision to its

Directive that further emphasizes its limited application to "established campsites." The

Directive provides no direction to officers who encounter people camping without a "camp

structure" and people who are camping without "the purpose of maintaining a temporary place to

live" (such as those putting up and taking down their camps overnight). The Directive also

expands the list of exceptions to the 24-hour notice requirement, adding "state and city property

that has been clearly signed as not being open to the public" and "parks property." Accordingly,

in the experience of Plaintiffs and other homeless individuals, Portland police officers do

frequently issue citations without providing 24 hours' notice, storing property, or notifying social

8      COMPLAINT

service agencies who could help campers move their camps or find shelter.

  29. Under PCC 14A.50.050, it is unlawful to erect, install, place, leave, or set up any type of permanent or temporary fixture or structure of any material(s) in or upon non-park public property or public right-of-way without a permit or other authorization from the City. Portland police officers frequently enforce this law against homeless individuals who have put up tents or even simply gathered their belongings together, often without providing 24 hours notice as required by state law.

  30. Under PCC 20.12.265, individuals may be excluded from public parks in the City of Portland for 30, 90, or 180 days for violation of any law, including camping. Portland police officers and park officers use park exclusions, with the underlying violation of camping, as a way to remove homeless people who are sleeping in parks. The park exclusion goes into effect immediately, with no review by any court or administrative body, unless an individual appeals his or her park exclusion.

  31. Portland has far more homeless people than available housing or shelter space for them. According to the Ten Year Plan To End Homelessness, a policy published in December 2004 and currently being implemented by the City of Portland and non-governmental partner organizations, about 4,000 people sleep outside or in shelters on any given night in Portland. According to a street count of persons sleeping outside conducted in 2007 by the City of Portland, 1,438 "unduplicated" persons slept outside in Portland on January 24, 2007. This count used both stringent criteria to avoid double-counting as well as a restricted definition of "homeless" (leaving out people who slept doubled-up in other households or in institutions such as hospitals and jails for the night). Its limitations were explicitly acknowledged (the inability to

9  COMPLAINT

find people who are well-hidden and the lack of resources to count everyone). According to the Ten Year Plan, "the current system does not have the capacity to meet the total demand for homeless services….the average wait to gain access to a publicly funded shelter is between 4-6 weeks (up to 10 weeks in the winter months)." Private religious shelters provide additional resources, but there are still not enough places for all who need shelter to sleep inside.

32.     Moreover, many homeless people cannot access shelters and/or have legitimate reasons for not doing so. These reasons may include mental illness, physical disabilities, needing to care for or be cared for by a partner or other adult family member, having a pet companion, drug or alcohol addiction, and concerns about safety and privacy in shelters.

33.     Rental housing in Portland is beyond the means of homeless people with no or minimum income below the poverty level. There is no general assistance money available to homeless persons in Oregon. Even federal benefits to persons with disabilities are inadequate to afford much of the rental housing available in Portland. Waiting time for persons on waiting lists for public or other subsidized housing is several months to over a year, with thousands of persons waiting for housing.

34.     While the City's efforts under the Ten Year Plan to End Homelessness are laudable, there is a serious inconsistency between these efforts and the actual on-the-ground policies dealing with the well over one thousand people who must sleep outside on any given night. Portland Police Bureau officers are currently enforcing Portland's anti-camping ordinance, PCC 14A.50.020, to prohibit sleeping on public property at all times of the day and night if the person has anything that could be interpreted as "bedding material" (e.g. a sleeping bag, a backpack, or a piece of cardboard underneath them). Officers also enforce PCC 14A.50.050

10     COMPLAINT

against homeless individuals who have put up tents for the night or who have gathered their belongings together. It is the policy and practice of officers to wake homeless campers up, tell them to move, and/or give them park exclusions and/or citations for violating the camping ordinance, erecting temporary structures, or trespassing. Officers have also undertaken a systematic effort to institute "trespass agreements" allowing them to remove sleeping people from doorways and other private property in downtown areas. Fences have been erected to barricade areas under bridges and overpasses where people sought shelter from the elements to sleep. The effect of all of these policies and practices is to criminalize the status of homelessness in Portland.

35.    Pursuant to the above-described policies and practices of Defendants, homeless people are cited, threatened with citation, arrested, and/or threatened with arrest. Homeless people cited for Code violations are punished with fines and community service and, if not paid or served, become subject to arrest for failure to appear in Court, which leads to time in jail.

36.    The above-described actions by Defendants have caused, and unless preliminarily and permanently enjoined, will continue to cause humiliation; psychological, physical and emotional suffering; degradation, pain and injury; financial loss; and loss of liberty and privacy to Plaintiffs and the class they represent.

37.    With respect to the plaintiffs and the class they represent, at the time of their citations and encounters with police ordering them to "move along," they were not committing any crime except "camping," that is, sleeping outside with survival gear such as blankets or a sleeping bag, a tent, or other belongings. Plaintiffs were and are involuntarily homeless, with no available shelter or lodging accommodations. They intend to and must sleep or lodge outside in

11    COMPLAINT

public without shelter. They have been and/or will be in the future cited, criminally charged, and arbitrarily moved from place to place. The ordinances and their enforcement by Defendants as set forth herein is an attempt by Defendants to deter Plaintiffs and the class they represent from performing among other things the necessary life function of sleeping safely and at peace.

38.     Defendants' actions pose a dangerous health risk to Plaintiffs and the class, and, as a result, to the general public. Sleep is a medical and physical necessity. Small amounts of sleep loss have subtle cognitive costs which appear to go unrecognized by the individual experiencing the sleep loss. More severe restriction of sleep for even a week leads to profound cognitive defects similar to those seen in some stroke patients which also appear to go unrecognized by the individual. Moreover, sleeping outside without any blanket or other shelter during cold and wet weather can be hazardous to life and health, in particular when individuals are already medically compromised. The City of Portland recently conducted a Vulnerability Index Survey which found that 47%, or 302 of 646 people surveyed who were sleeping outside in Portland, met at least one criterion to be considered medically vulnerable and thus at risk of early death on the street.

39.     Plaintiffs and the class members have been cited and/or excluded and will continue to be cited and/or excluded for engaging in or attempting to engage in such life-sustaining activities. Defendants' actions are likely to threaten the already precarious existence of Plaintiffs and the class by imposing or enforcing upon them health and safety hazards as well as economic hardship.

## CLASS ALLEGATIONS

40.     Plaintiffs seek to have a class certified under Rule 23(b)(2) and/or 23(b)(3) of the

12      COMPLAINT

Federal Rules of Civil Procedure.

41.    The class is defined as the class of all persons who (a) are, or will be homeless in that they are, or will be, without fixed nighttime shelter because they lack the financial resources or have other problems that prevent them from being able to provide for their own food, shelter and other essentials; (b) reside within the City of Portland; and (c) were cited or excluded, or will be cited or excluded, under the City ordinances applied to the class pursuant to the City policies, practices or customs of enforcement challenged by this action.

42.    The class is so numerous that joinder of all members is impractical. Plaintiffs believe that hundreds of people have been or will be subjected to Defendants' unlawful policies, practices and customs. There are questions of law and fact common to all members of the class. The claims of the representative parties are typical of the claims of the class members. The representative parties will fairly and adequately represent the interests of the class.

43.    Defendants' policies or practices will affect all members of the class in the same way, thereby making injunctive and declaratory relief appropriate to the class as a whole. The common questions of law to be determined with respect to the class are whether Defendants' policies, practices and customs of subjecting homeless people to citation for sleeping outdoors, and/or moving homeless people out of the areas where they sleep, when there is no available alternative place to sleep, day or night, violates the rights of class members under the Eighth and Fourteenth Amendments to the United States Constitution. These questions of law are common to all members of the class and predominate over any question affecting individual class members.

44.    The class representatives know of no conflict of interest among class members.

13      COMPLAINT

Plaintiffs' attorneys have experience with class action and civil rights cases and can vigorously prosecute this action.

## FIRST CLAIM FOR RELIEF

### Eighth Amendment to the U.S. Constitution

45.     Forces beyond Plaintiffs' control, such as unemployment, poverty, and the failure of Defendants to provide alternatives, including but not limited to those which may be mandated by law, have compelled Plaintiffs and others to live and sleep outside on public property.

46.     Sleeping is necessary to the maintenance of life.  It constitutes an involuntary manifestation of the Plaintiffs' status as homeless people.  Plaintiffs and the members of the class cannot avoid or do without sleep.

47.     The Defendants' pattern of citing and threatening to arrest involuntarily homeless individuals such as Plaintiffs for illegal camping and other offenses when they are sleeping outdoors, is performed under color of state law by the Defendants, who are state actors, and constitutes punishment of Plaintiffs based on their status as homeless persons, and as such, is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

48.     Plaintiffs therefore seek redress for the violation of their right to be free from cruel and unusual punishment, as guaranteed by the Eighth Amendment to the United States Constitution, pursuant to 42 USC § 1983.

## SECOND CLAIM FOR RELIEF

### Fourteenth Amendment to the U.S. Constitution (Right to Travel and Freedom of Movement)

14      COMPLAINT

49.     The right to travel is a fundamental constitutional right, arising from the Fourteenth Amendment's substantive Due Process Clause, and includes the freedom to move about and be in one place for innocent purposes. Defendants' above-described policies, practices and conduct make it impossible for Plaintiffs and other homeless people lawfully to travel to or reside in Portland. They can live here only by violating the camping ordinance and/or the unlawful structures ordinance (PCC 14A.50.020 and 14A50.050). They cannot travel to Portland, as every individual has a human need to sleep and will need to sleep at some point when they travel to a city. When Portland's police and municipal court enforce these ordinances, they effectively drive homeless people out of town and prevent them from coming here. Defendants have therefore violated the constitutional right to freedom of movement and travel guaranteed by the Fourteenth Amendment to the United States Constitution.

50.     Plaintiffs therefore seek redress for the violation of their right to freedom of movement and rights to interstate and intrastate travel guaranteed by the Fourteenth Amendment to the United States Constitution, pursuant to 42 USC § 1983.

### THIRD CLAIM FOR RELIEF

### Fourteenth Amendment to the U.S. Constitution (Equal Protection)

51.     Defendants' above-described policies, practices and conduct are intended and designed to single out homeless people. These policies and actions are based on Defendants' animus towards this disfavored group and lack a rational relationship to any legitimate state interest. In adopting and implementing these policies and practices with intent to harm and disadvantage homeless persons in the City of Portland, the Defendants have violated the Equal Protection Clause of the U.S. Constitution and 42 USC § 1983.

15     COMPLAINT

52.    Plaintiffs therefore seek redress for the violation of their right to equal protection, as guaranteed by the Fourteenth Amendment to the United States Constitution, pursuant to 42 USC § 1983.

## FOURTH CLAIM FOR RELIEF

### Fourteenth Amendment to the U.S. Constitution (Liberty Interest)

53.    The freedom to be in one place for innocent purposes is also a part of the liberty protected by the Due Process Clause of the Fourteenth Amendment. The decision to remain in a public place of one's choice is as much a part of personal liberty as the freedom of movement inside our country's borders.

54.    Defendants' above-described policies, practices and conduct have infringed and will continue to infringe Plaintiffs' right to remain not merely in a public place of their choice, but in the entire City of Portland. Plaintiffs do not seek merely to sleep in particular locations within Portland, but have a human need to sleep somewhere in the city in which they reside, and have no lawful alternative to sleeping outside. By enforcing laws and policies that prohibit them from resting in one place to sleep, Defendants are excluding or attempting to exclude them from the City as a whole, in violation of the Fourteenth Amendment to the U.S. Constitution and 42 USC § 1983.

55.    Plaintiffs therefore seek redress for the violation of their right to personal liberty, as guaranteed by the Fourteenth Amendment to the United States Constitution, pursuant to 42 USC § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask the Court for the following relief:

16    COMPLAINT

56.    To accept jurisdiction of their state and federal claims;

57.    To grant them a jury trial;

58.    To issue an order certifying the proposed class together with any necessary and appropriate sub-classes under Federal Rule of Civil Procedure 23;

59.    To issue a temporary restraining order and/or preliminary injunction and permanent injunction enjoining and restraining Defendants from continuing or repeating the unlawful policies, practices and conduct complained of herein, and specifically to:

      a. Suspend enforcement of PCC 14A.50.020, the anti-camping ordinance, and

      b. Suspend enforcement of PCC 14A.50.050, the unlawful structures ordinance, against people who are homeless;

60.    To issue a declaratory judgment that Defendants' policies, practices and conduct as alleged herein were or are in violation of Plaintiffs' rights under the United States Constitution;

61.    To award damages in an amount according to proof;

62.    To award plaintiffs attorneys' fees and costs pursuant to 42 USC § 1988; and

63.    To grant such other relief as may be just and appropriate.

OREGON LAW CENTER

Monica Goracke, OSB #06065
Ed Johnson, OSB #96573
Spencer M. Neal, OSB #77286
(503) 473-8312
Attorneys for Plaintiffs

17    COMPLAINT