FILED '09 JUL 31 13:59 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARLIN ANDERSON, MARY BAILEY,               Civ. No. 08-1447-AA
MATTHEW CHASE, JACK GOLDEN, on
behalf of themselves and all                 OPINION AND ORDER
others similarly situated,

          Plaintiffs,

     v.

CITY OF PORTLAND; CITY OF
PORTLAND POLICE CHIEF ROSANNE
SIZER, in her individual and
official capacity; CITY OF
PORTLAND POLICE OFFICER J.
HURLEY, in his individual and
official capacity; CITY OF
PORTLAND POLICE OFFICER J.
FULITANO, in his individual
and official capacity; CITY
OF PORTLAND POLICE OFFICERS
DOES 1 THROUGH 50,

          Defendants.

_____

Monica Goracke
Ed Johnson
Spencer M. Neal
Oregon Law Center
921 S.W. Washington #516
Portland, OR  97205
     Attorneys for plaintiffs

1    - OPINION AND ORDER

David A. Landrum
Deputy City Attorney
Office of City Attorney
1221 S.W. Fourth Ave., Room 430
Portland, OR  97204
      Attorney for defendants

AIKEN, Chief Judge:

      Plaintiffs bring a class action suit under 42 U.S.C. § 1983, alleging violations of their rights to be free from cruel and unusual punishment under the Eighth Amendment and their rights to travel, freedom and movement, and equal protection under the Fourteenth Amendment.    Plaintiffs    contend    that    defendants' enforcement of no-camping and temporary structure ordinances essentially criminalizes the status of being homeless, singles out the homeless for disparate treatment, and prevents the homeless from  traveling  to  or  residing  in  the  City  of  Portland. Accordingly,  plaintiffs  seek  a  declaration  that  defendants' enforcement of the ordinances is unconstitutional, an injunction prohibiting their enforcement against plaintiffs and other class members, as well as damages, costs, and attorneys fees.

      Defendants City of Portland, Police Chief Rosanne Sizer, and City of Portland Police Officers J. Hurley and J. Fulitano (the City) move for dismissal of plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.   The motion is granted with respect to plaintiffs' right to travel, freedom of movement and substantive due process claims, and denied with respect to plaintiffs' Eighth Amendment and equal protection claims.

2    - OPINION AND ORDER

## BACKGROUND

The Portland City Code (PCC) renders it unlawful "for any person to camp in or upon any public property or public right of way" unless otherwise authorized by the PCC or the mayor in "emergency circumstances." PCC § 14A.50.020(B). "To camp" is defined as "to set up, or to remain in or at a campsite, for the purpose of establishing or maintaining a temporary place to live." Id. § 14A.50.020(A)(1). "Campsite" is defined as "any place where any bedding, sleeping bag, or other sleeping matter, or any stove or fire is placed, established, or maintained, whether or not such place incorporates the use of any tent, lean-to, shack, or any other structure . . . ." Id. § 14A.50.020(A)(2). A violation of § 14A.50.020 is punishable by a fine not to exceed $100 and a term of imprisonment not to exceed 30 days. Id. § 14A.50.020(C).

It is also unlawful "to erect, install, place, leave, or set up any type of permanent or temporary fixture or structure of any material(s) in or upon non-park public property or public right-of-way without a permit or other authorization from the City." PCC § 14A.50.050(A). Any such fixture or structure is deemed a "public nuisance," and "[i]n addition to other remedies provided by law," may be "summarily" abated by the police. Id. § 14A.50.050(B).

An Executive Order issued by the Chief of Police addresses the "clean-up" of "established campsites" by police officers. Defendants' Memorandum in Support of Motion of Dismiss, Ex. 3. A

3    - OPINION AND ORDER

"camp clean-up" is "any organized, prearranged operation by or on behalf of the Bureau to remove illegal campers, camps or camp structures from an established campsite." Id. p. 1. "Established campsites" are "locations where a camp structure such as a hut, lean-to or tent is set up for the purpose of maintaining a temporary place to live and exists on public property." Id. Under the Executive Order, officers are required to post a 24-hour notice prior to clean-up of the campsite and to notify JOIN - a local agency that provides services to homeless persons - of the pending clean-up. Id. p. 2. Campsites located on private property or public rights of way or those constituting "public health hazards" do not require 24 hours notice prior to clean-up. Id. pp. 2-3.

Plaintiffs Marlin Anderson, Mary Bailey, Matthew Chase, and Jack Golden are involuntarily homeless and reside in Portland, Oregon.

Anderson has physical and mental disabilities that preclude full-time employment. Anderson occasionally finds temporary work and resides in a van with his five dogs. Anderson has been warned by police officers not to camp in Delta Park in northeast Portland.

Bailey also has disabilities that prevent full-time employment, including seizures that affect her memory. Bailey and her partner, plaintiff Matthew Chase, usually sleep outside in southeast Portland near the Hawthorne Bridge. Bailey and Chase are frequently told by police officers that they cannot lie down and to

4    - OPINION AND ORDER

"move along." Although her medical problems require Bailey to rest, police officers have told Bailey that she cannot lie down to sleep. Shelter beds for women are extremely limited in Portland, and Bailey needs the help and protection of Chase when she suffers seizures.

Golden is also disabled and receives disability benefits. Golden cannot find affordable housing and typically sleeps outside in southeast Portland near the Hawthorne Bridge. While sleeping outside, Golden has been told by police officers to "move along."

Defendant Rosanne Sizer is the Chief of Police of the Portland Police Bureau, and defendants J. Hurley and J. Fulitano are Portland Police Bureau Officers who issued camping or unlawful structure citations to Anderson, Chase, and Golden.

On the afternoon of August 30, 2007, Anderson was napping on top of his sleeping bag in Delta Park in north Portland, just south of the dog park at Hayden Meadows Drive. Officer Hurley made contact with Anderson and cited him for unlawful camping under PCC § 14A.50.020. Anderson pled not guilty and was scheduled for trial on October 15, 1997. On October 11, 2007, after being notified that Anderson would be represented by counsel, the District Attorney dismissed the citation.

On May 7, 2008, Chase and Golden were in a temporary campsite under the Hawthorne Bridge. Portland police officers posted a no-camping notice on each of their tents, with handwritten notes

stating:  "1 p.m., time to be moved or this stuff will be taken away."  Chase and Golden understood this to mean that they had 24 hours from 1:00 p.m. on May 7, 2008 to move their tents and belongings.  Instead, just before 9:00 p.m. on May 7, 2008, Officer Fulitano arrived and ordered them to remove their belongings immediately.  The officer cited both men for "erecting a structure on public property" in violation of PCC § 14A.50.050.

In September 2008, Bailey and Chase were living in the parking lot of a private building in southeast Portland with the permission of the building manager.  The manager told Bailey and Chase that police officers had threatened to "shut down" the building if Bailey and Chase did not move their belongings.  On or about October 1, 2008, Bailey and Chase moved their personal property to the nearby street, taking care not to obstruct public rights-of-way.  The next day, they found most of their belongings gone and the rest scattered about.  A "notice of illegal camping" was found with their belongings, with no date or time given for the clean-up and seizure of their property.

Bailey and Chase went to the address listed on the notice to retrieve their property and found only a few pieces of clothing that were wet and moldy.  Missing were two bicycles, two bicycle trailers, clothing, boots, tools, personal items, and family photographs and mementos, including the ashes of Bailey's deceased father.  Bailey and Chase allege that, if given adequate notice of

the sweep, they would have contacted a local service agency to help move their property.

On December 12, 2008, plaintiffs filed suit.    Plaintiffs allege that the City's enforcement of the anti-camping and temporary structure ordinances essentially criminalizes the status of homelessness in violation of the Eighth Amendment, because it punishes them for sleeping in a public place even though they have no lawful place to sleep.    Plaintiffs also allege that they and other homeless people have been singled out for enforcement of the anti-camping and temporary structure ordinances, thus denying them equal protection under the law.    Finally, plaintiffs allege that defendants' enforcement of the ordinances interferes with their fundamental rights of travel and freedom of movement, and infringes on their substantive liberty interests.

DISCUSSION

The City argues that plaintiffs fail to state a claim for which relief may be granted.    Fed. R. Civ. P. 12(b)(6).    At this stage of the proceedings, plaintiffs' factual allegations are accepted as true, with all inferences construed in their favor. Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 900 (9th Cir. 2007).    Although plaintiffs' complaint need not assert detailed factual allegations, it nevertheless must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

7    - OPINION AND ORDER

A. Cruel and Unusual Punishment under the Eighth Amendment

Plaintiffs allege that the City's enforcement of the ordinances targets their involuntary conduct of sleeping outside on public property, essentially criminalizing the status of homelessness in violation of the Eighth Amendment's prohibition against cruel and usual punishment. The City moves to dismiss this claim on grounds that:  1) violation of the temporary structure ordinance is not a "crime"; 2) plaintiffs lack standing to assert an Eighth Amendment claim absent convictions under the challenged ordinances; and 3) the ordinances do not violate the Eighth Amendment because they criminalize conduct rather than status.

1. Temporary Structure Ordinance PCC § 14A.50.050

The City argues that the Eighth Amendment does not apply to PCC § 14A.50.050, because erecting a temporary structure is considered a nuisance rather than a crime and is punishable through abatement of the structure instead of fines and/or imprisonment. However, as noted by plaintiffs, abatement is not the sole remedy for erecting a temporary structure on public property or rights of way. Rather, abatement is available "in addition to other remedies provided by law," PCC § 14A.50.050(B), which include a fine of not more than $500 and a term of imprisonment not exceeding six months. Id. § 14A.20.060. Therefore, the temporary structure ordinance is not outside the scope of the criminal process and accompanying Eighth Amendment restrictions.

8    - OPINION AND ORDER

2.  Standing

Defendants next argue that plaintiffs lack standing to bring
an Eighth Amendment challenge, because they have not been convicted
of violating the ordinances.  Relying on the Fifth Circuit decision
in Johnson v. City of Dallas, 61 F.3d 442 (5th Cir. 1995),
defendants argue that "the Eighth Amendment 'was designed to
protect those convicted of crimes,'" and absent convictions under
the anti-camping or temporary structure ordinances, plaintiffs have
not suffered injury in fact and therefore lack standing to raise a
Eighth Amendment challenge.  Id. at 444 (quoting Ingraham v.
Wright, 430 U. S. 651, 664 (1977)).  At oral argument, the City
conceded that two plaintiffs have convictions under the temporary
structure ordinance.  Regardless of actual convictions, I find that
plaintiffs' allegations are sufficient to confer standing.

In Ingraham, the Supreme Court described three ways in which
the Eighth Amendment "circumscribes" the criminal process:

> First, it limits the kinds of punishment that can be
> imposed on those convicted of crimes; second, it
> proscribes punishment grossly disproportionate to the
> severity of the crime; and *third, it imposes substantive
> limits on what can be made criminal and punished as such.*

Ingraham, 430 U.S. at 667 (citations omitted) (emphasis added).
Thus, while the City is correct that Ingraham recognized the
"primary purpose" of the Eighth Amendment is to protect those
convicted of crimes, it also limits "what can be made criminal,"
implicating conduct that is *subject* to criminal prosecution.  See

9   - OPINION AND ORDER

Lehr v. City of Sacramento, 2009 WL 1420967, *9 (E.D. Cal. May 20,
2009); Joyce v. City and County of San Francisco, 846 F. Supp. 843,
853 (N.D. Cal. 1994).    Therefore, I do not find that Ingraham
limits Eighth Amendment challenges to those plaintiffs who have
been convicted of a crime.    Instead, I follow the lead of the Ninth
Circuit and apply established requirements for standing.    See Jones
v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006),
vacated by 505 F.3d 1006 (9th Cir. 2007).[1]

To establish Article III standing, plaintiffs must show injury
in fact, causation, and redressability.    Prescott v. County of El
Dorado, 298 F.3d 844, 846 (9th Cir. 2002).    Where the plaintiffs
seek to enjoin law enforcement activities, "standing depends on
[their] ability to avoid engaging in the illegal conduct in the
future."  Jones, 444 F.3d at 1126 (citing Hodgers-Durgin v. de la
Vina, 199 F.3d 1037, 1041 (9th Cir. 1999) (en banc)).    Plaintiffs
need only establish a "reasonable expectation" that their conduct
will recur and trigger the alleged harm.    Id. at 1127.

---

[1]Jones involved a similar challenge brought by homeless
persons against the City of Los Angeles.    Jones was vacated by the
Ninth Circuit to facilitate settlement between the parties and may
not be cited as binding precedent.    Jones, 505 F.3d 1006.  However,
because the decision to vacate did not affect the reasoning in
Jones, I may consider it as persuasive authority in developing an
informed analysis of the issues presented.    See DHX, Inc. v.
Allianz AGF MAT, Ltd., 425 F.3d 1169, 1176 (9th Cir. 2005) ("But at
minimum, a vacated opinion still carries informational and perhaps
even persuasive or precedential value.") (Beezer, J., concurring);
McKenzie v. Day, 57 F.3d 1493, 1494 (9th Cir. 1995) (utilizing
vacated opinion as persuasive authority and adopting analysis).

Here, plaintiffs allege past injuries and threatened future injuries resulting from the City's enforcement of the anti-camping and temporary structure ordinances through the threat of criminal sanctions and the loss of personal property.  Further, plaintiffs claim that they may be excluded from public parks in Portland for up to 180 days for violating the anti-camping ordinances. Plaintiffs allege that they are likely to violate the ordinances in the future by sleeping in public places, because they have no other place to sleep.  Jones, 444 F.3d at 1127.  Thus, plaintiffs have standing to assert an Eighth Amendment claim.

### 3.  Status vs. Conduct

The City next argues that plaintiffs fail to state a meritorious Eighth Amendment claim, because the challenged ordinances target the conduct of camping and erecting temporary structures rather than the status of being homeless.  Plaintiffs respond that they do not assert a facial challenge to the ordinances; rather, plaintiffs argue that the City's enforcement of the ordinances extends beyond the limits of "what can be made criminal" under the Eighth Amendment.  Ingraham, 430 U.S. at 667.

On two occasions, the Supreme Court has addressed whether laws impermissibly criminalize status rather than conduct.  In Robinson v. California, 370 U.S. 660 (1962) the Court found unconstitutional a statute rendering it criminal to "be addicted to the use of narcotics."  In so holding, the Court equated drug addiction to an

illness "which may be contracted innocently or involuntarily" and found that the imposition of criminal punishment against a drug addict, "even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there," constituted cruel and unusual punishment. Id. at 667.

A few years later, the Court addressed a criminal statute prohibiting public intoxication. See Powell v. Texas, 392 U.S. 514 (1968). A plurality of the Court distinguished Robinson and found that the statute proscribed conduct in conformity with the Eighth Amendment, even though the defendant was a chronic alcoholic and claimed to have no control over his alcohol consumption. Id. at 532-33. The plurality interpreted Robinson to prohibit the criminalization of "mere status" and declined to extend Eighth Amendment protection to "involuntary" conduct. Powell, 392 U.S. at 534-36 ("Ultimately, then, the most troubling aspects of this case, were Robinson to be extended to meet it, would be the scope and content of what could only be a constitutional doctrine of criminal responsibility.").

Courts have reached differing conclusions in deciding whether the Eighth Amendment protects homeless persons against the enforcement of criminal laws that prohibit sleeping in public areas. For examples, in Jones, the Ninth Circuit concluded that a City of Los Angeles ordinance that criminalized "sitting, lying, or sleeping on public streets and sidewalks at all times" could not be

enforced against the homeless population.  <u>Jones</u>, 444 F.3d at 1120,

1138.  The court reasoned:

> Because there is substantial and undisputed evidence that
> the number of homeless persons in Los Angeles far exceeds
> the number of available shelter beds at all times,
> including on the nights of their arrest or citation, Los
> Angeles has encroached upon Appellants' Eighth Amendment
> protections by criminalizing the unavoidable act of
> sitting, lying, or sleeping at night while being
> involuntarily homeless.  A closer analysis of *Robinson*
> and *Powell* instructs that the involuntariness of the act
> or condition the City criminalizes is the critical factor
> delineating a constitutionally cognizable status, and
> incidental conduct which is integral to and an
> unavoidable result of that status, from acts or
> conditions that can be criminalized consistent with the
> Eighth Amendment.

<u>Id.</u> at 1132; <u>see also</u> <u>Pottinger v. City of Miami</u>, 810 F. Supp.

1551, 1564 (S.D. Fla. 1992) (finding that "arresting homeless

people for harmless acts they are forced to perform in public

effectively punishes them for being homeless").

    In contrast, the Eleventh Circuit rejected a similar challenge

to a City of Orlando ordinance, emphasizing that the city presented

"unrefuted" evidence that a large homeless center had "never

reached its maximum capacity" and no individual was ever turned

away by the shelter for lack of available space.  <u>Joel v. City of</u>

<u>Orlando</u>, 232 F.3d 1353, 1362 (11th Cir. 2000).  Thus, the court

concluded that "[t]he City is constitutionally allowed to regulate

where 'camping' occurs, and the availability of shelter space means

that Joel had an opportunity to comply with the ordinance."  <u>Id.</u>

<u>see also</u> <u>Joyce</u>, 846 F. Supp. at 857, 858 ("On no occasion,

13  - OPINION AND ORDER

moreover, has the Supreme Court invoked the Eighth Amendment in order to protect acts derivative of a person's status. . . . such a holding would be required to provide constitutional protection to any condition over which a showing could be made that the defendant had no control."). Similarly, the district court in Lehr recently rejected the analysis of the Ninth Circuit in Jones, finding it unsupported by Powell or Robinson. Lehr, 2009 WL 1420967 at *14, 17 (declaring that plaintiffs' argument would "set precedent for an onslaught of challenges to criminal convictions by those who seek to rely on the involuntariness of their actions").

Citing Joel, Joyce, Lehr, and Judge Rymer's dissent in Jones, the City argues that plaintiffs fail to allege inadequate shelter space to render their conduct "involuntary," that the ordinances target conduct rather than status, and that homelessness is not a constitutionally cognizable status engendering protection for derivative acts. Plaintiffs emphasize that no case relied on by the City was decided at the pleadings stage and argue that they are entitled to demonstrate that the City's enforcement of the challenged ordinances criminalizes conduct - i.e., sleeping in public - that is inexplicably intertwined with their "involuntary condition" of homelessness.

I recognize and appreciate the reluctance of Joyce and Lehr to extend blanket constitutional protection to involuntary acts derivative of status, given the dearth of precedential guidance.

14  - OPINION AND ORDER

I further agree with Lehr that disallowing criminal sanctions based
on the involuntariness of such conduct creates a slippery slope
that may not be contained. Lehr, 2009 WL 1420967, *17 (a decision
in the plaintiffs' favor "would potentially provide constitutional
recourse to anyone convicted on the basis of conduct derivative of
a condition he is allegedly 'powerless to change'"). That said, it
seems a reasonable proposition under the Eighth Amendment that
homeless persons should not be subject to criminal prosecution for
merely sleeping in public at any time of day.

Ultimately, I part company with the reasoning employed by
Jones, Joel, and Pottinger and decline to adopt the pronouncement
that the Eighth Amendment limitation on criminalizing "mere status"
depends *solely* on whether the challenged law or its enforcement
targets derivative, "involuntary" conduct. See, e.g., Jones, 444
F.3d at 1132 ("the involuntariness of the act or condition . . . is
the critical factor delineating a constitutionally cognizable
status"); Pottinger, 810 F. Supp. at 1562 (noting that the
"voluntariness of the status or condition is the decisive factor").
Rather, an equally important factor is the nature of the prohibited
conduct.

Notably, while reiterating the principal that an *actus reas* is
required for criminal proscription, the Supreme Court in Powell
also looked to the nature of the act and the reasons for its
prohibition:

15  - OPINION AND ORDER

> The State of Texas thus has not sought to punish a mere status, as California did in Robinson; nor has it attempted to regulate appellant's behavior in the privacy of his own home. Rather, *it has imposed upon appellant a criminal sanction for public behavior which may create substantial health and safety hazards . . . and which offends the moral and esthetic sensibilities of a large segment of the community.*

Powell, 392 U.S. at 532 (emphasis added); see also Jones, 444 F.3d at 1139 (recognizing that "both the [Supreme] Court and [the Ninth Circuit] have constrained this category of Eighth Amendment violation to persons who are being punished for *crimes that do not involve conduct that society has an interest in preventing*") (Rymer, J., dissenting) (emphasis added); Pottinger, 810 F. Supp. at 1564, 1565 n.19 (noting the "harmless" and "innocent" nature of criminalized conduct). Thus, in addition to the involuntariness of the targeted conduct and its relatedness to a claimed status, a critical factor is whether and to what degree the City's enforcement of the anti-camping and temporary structure ordinances criminalizes "conduct that society has an interest in preventing."

Here, plaintiffs argue that the City is enforcing the anti-camping ordinance to prohibit sleeping or lying on public property at any time if "bedding material" is present. Plaintiffs allege that officers cited Anderson for napping on top of his sleeping bag in a City park during the day. Plaintiffs further allege that police officers have told Bailey, Chase, and Goldman to "move along" when lying down or sleeping on public property. Plaintiffs maintain that Portland has far more homeless people than available

16   - OPINION AND ORDER

shelter space, and that many homeless people cannot access shelters based on physical disabilities, mental illness, or other factors. Plaintiffs argue that if homeless people have nowhere else to sleep, punishing them for sleeping in a public place essentially renders sleeping, and their status of homelessness, a crime.

Thus, I find that plaintiffs adequately state a claim under the Eighth Amendment, in that they allege that the City's enforcement of the anti-camping and temporary structure ordinances criminalizes them for being homeless and engaging in the involuntary and innocent conduct of sleeping on public property. Given that plaintiffs bring an as-applied challenge, precisely when, where and how the City enforces the anti-camping and temporary structure ordinances requires development of the facts. Accordingly, the City's motion is denied with respect to plaintiff's Eighth Amendment claim.

B. Equal Protection

The City next moves for dismissal of plaintiffs' equal protection claim, arguing that strict scrutiny does not apply to the court's review of the challenged ordinances, and that the City posits a rational basis for the prohibition of camping and temporary structures on public property.

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" Plyler v. Doe, 457 U.S. 202, 216 (1982) (quoting F.S. Royster Guano Co. v.

Virginia, 253 U.S. 412, 415 (1920)).  Where a plaintiff alleges
selective enforcement of criminal laws in violation of the Equal
Protection Clause, the "plaintiff must demonstrate that enforcement
had a discriminatory effect and the police were motivated by a
discriminatory purpose."  Rosenbaum v. City and County of San
Francisco, 484 F.3d 1142, 1152 (9th Cir. 2007) (citing Wayte v.
United States, 470 U.S. 598, 608 (1985)).  Further, plaintiffs
"seeking to enjoin alleged selective enforcement must demonstrate
the police misconduct is part of a 'policy, plan, or a pervasive
pattern.'"  Id. at 1153 (quoting Thomas v. County of Los Angeles,
978 F.2d 504, 509 (9th Cir. 1993)).

      Notably, "the availability of such a claim has never been
limited only to those groups accorded heightened scrutiny under
equal protection jurisprudence."  Stemler v. City of Florence, 126
F.3d 856, 874 (6th Cir. 1997).  "Instead, a plaintiff makes out a
selective-enforcement claim if she shows that the state based its
enforcement decision on an 'arbitrary classification,' that . . .
gives rise to an inference that the state 'intended to accomplish
some  forbidden  aim'  against  that  group  through  selective
application of the laws."  Id. (quoting Oyler v. Boles, 368 U.S.
448, 456 (1962) and Futernick v. Sumpter Twp., 78 F.3d 1051, 1056
(6th Cir. 1996)).

      Thus, for purposes of this motion I need not decide whether
homelessness  is  a  "suspect  class,"  whether  sleeping  is  a

"fundamental right," or whether strict scrutiny or rational basis
review applies.[2]   Here, plaintiffs allege that police officers
cited Anderson for napping on a sleeping bag in a public park,
repeatedly tell Bailey, Chase, and Golden to "move along" while
lying down or sleeping outside, and seize personal property while
conducting camp clean-ups without adequate notice.   Further,
plaintiffs allege that the City's enforcement is strategically
deployed to target and harass homeless persons.  Given plaintiffs'
allegations of selective enforcement of the anti-camping and
temporary structure ordinances against the homeless based on
improper motives, I find that plaintiffs sufficiently state an
equal protection claim.

C.  Right to Travel and Freedom of Movement

     The City moves for dismissal of plaintiffs' right to travel
and freedom of movement claims, arguing that the challenged
ordinances do not distinguish between residents and non-residents,
apply to all persons within the City limits, and do not infringe on
plaintiffs' rights to interstate travel or freedom of movement.

     Plaintiffs respond that the anti-camping and temporary
structure ordinances burden their fundamental right to travel and
freedom of movement by denying their ability to "merely exist in a
place," i.e., to travel to and reside in the City of Portland,

_____

     [2]Plaintiffs also allege that the City's enforcement interferes
with their fundamental rights under the Eighth and Fourteenth
Amendments.

19   - OPINION AND ORDER

without risking citation or arrest.  Plaintiffs argue that being
cited or told to "move along" for sleeping outside with "any
sleeping matter" on any public property at any time restricts
homeless persons' ability to travel to or reside in Portland.  I am
not persuaded.

"Citizens have a fundamental right of free movement,
historically part of the amenities of life as we have known them."
Nunez by Nunez v. City of San Diego, 114 F.3d 935, 944 (9th Cir.
1997) (citation and quotation marks omitted).  The Supreme Court
has "expressly identified this 'right to remove from one place to
another according to inclination' as 'an attribute of personal
liberty' protected by the Constitution."  City of Chicago v.
Morales, 527 U.S. 41, 53 (1999).  Further, the Constitution
guarantees the fundamental right to interstate travel.  Nunez, 114
F.3d at 944 (citing Shapiro v. Thompson, 394 U.S. 618, 629 (1969)).
The Supreme Court has not recognized a fundamental right to
intrastate travel, though plaintiffs contend the right has been
recognized implicitly.

Regardless, I am unpersuaded by the cases on which plaintiffs
rely.  In Pottinger, the district court declared that "the City's
enforcement of laws that prevent homeless individuals who have no
place to go from sleeping, lying down, eating and performing other
harmless life-sustaining activities burdens their right to travel"
by denying them "certain life necessities."  810 F. Supp. at 1580.

In so holding, the district court cited Memorial Hosp. v. Maricopa County, 415 U.S. 250, 259 (1974), where the Supreme Court held that a statute conditioning free medical care on a one-year residency requirement violated the equal protection clause because it penalized the exercise of the right to travel by denying a basic "necessity of life." In contrast, the City here is not granting or withholding basic "necessities of life" through travel or residency restrictions. I thus decline to adopt the reasoning in Pottinger.

In Johnson v. Board of Police Comm'rs, 351 F. Supp. 2d 929 (E.D. Mo. 2004) the district court found a likelihood of success on the merits of the plaintiffs' right to travel claim, noting that they "have been arrested while eating, sitting, or standing in public places in the Downtown area," "physically removed from the Downtown area by police and abandoned north of the area," and "told that they are not wanted in certain Downtown areas." Id. at 949. Here, although plaintiffs allege that police officers may exclude homeless persons from public parks for violating the anti-camping or temporary structure ordinances, plaintiffs do not allege that they have been excluded from a particular area of Portland. Therefore, I find Johnson distinguishable.

As alleged in their Complaint, I fail to discern how the alleged actions of the City interfere with plaintiffs' constitutional right to travel. Plaintiffs allege that police officers have told them to "move along" when sleeping in public and

conducted camp clean-ups and seized their property. However, plaintiffs do not allege that the City has attempted to restrain their movement, prevented them from traveling to or from the City, or excluded them from certain areas of the City. Granted, the City's enforcement of the anti-camping and temporary structure ordinances may render Portland unattractive to homeless persons, but it does not constitute inference with plaintiffs' right to travel or freedom of movement that rises to the level of a constitutional deprivation. See Davison v. City of Tuscon, 924 F. Supp. 989, 993 (D. Ariz. 1996).

D.  Substantive Due Process

Plaintiffs also assert a substantive due process claim, alleging that the "decision to remain in a public place of one's choice is as much a part of personal liberty as the freedom of movement inside our country's borders."    Complaint, ¶ 53. Plaintiffs also allege that they have a "human need to sleep somewhere in the city in which they reside, and have no lawful alternative to sleeping outside." Id. ¶ 54.

However, plaintiffs cannot assert a substantive due process claim under the Fourteenth Amendment when the challenged conduct falls under a more specific constitutional right.    Albright v. Oliver, 510 U.S. 266, 272-75 (1994); Graham v. Connor, 490 U.S. 386, 394-95 (1989).  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a

particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"   Albright, 510 U.S. at 273 (quoting Graham, 490 U.S. at 395).

Plaintiffs concede that the rights asserted under their substantive due process claim are duplicative of those asserted under their right to travel and freedom of movement claims. Therefore, this claim is dismissed.

CONCLUSION

Defendants' Motion to Dismiss (doc. 6) is GRANTED in part and denied in part. Plaintiffs' right to travel, freedom of movement, and substantive due process claims are HEREBY DISMISSED. Defendants' motion is denied with respect to plaintiffs' Eighth Amendment and equal protection claims.

IT IS SO ORDERED.

Dated this _30_ day of July, 2009.


_____
Ann Aiken
Chief United States District Judge